## BARCLAY'S APPEAL.

Where the answer is responsive to and denies the material allegations of the bill, which are supported by only one witness, the Court will not make a decree or grant an issue, but will simply dismiss the bill.

Appeal from Common Pleas, No. 1, of Philadelphia County. In Equity.    No. 158 January Term, 1879.

T. M. Rettew bought 500 shares of the preferred stock of the Union Canal Company under an agreement, as Rettew alleges, with William K. Barclay that said stock should be held in the name of Rettew until Barclay should pay half of the cost with interest, and that in that way they should share the gains and losses.    Barclay alleges that he was to have one-half of the gain, but was to be protected from loss.    The Court below made a decree that the master sell the stock at auction and that Barclay should pay one-half of the deficiency

that remained after deducting the price realized from the cost price with interest added.

Barclay then appealed to the Supreme Court.

*J. P. Brinton* and *W. W. Wiltbank, Esqs.*, for appellant, argued that the answer is responsive to the bill, and denies its material allegations; and the answer cannot be overcome unless there are two witnesses for plaintiff; Audenried vs. Walker, 8 Phila., 182; Eaton's Appeal, 66 Pa., 483; Cook vs. Jackson, 6 Vesey, Jr., 40; Vandergrift, vs. Herbert, 3 C. E. Green, 466.

*J. H. Gendell, Esq.,* contra.

The Supreme Court reversed the decree of the Common Pleas and dismissed the bill on February 28, 1881, in the following opinion, per

STERRETT, J.:

This case hinges solely on the allegation of fact contained in the bill, that the defendant, Barclay, agreed to pay half the loss that might result from the single venture or purchase of stock therein mentioned. The burden of proving that fact was on the plaintiff; and, aside from other considerations, he was not entitled to a decree unless he succeeded in doing so.

The stock was procured by defendant in May, 1873, through the agency of a broker, employed by him for that purpose; but the purchase money was all paid by plaintiff, to whom the stock was transferred and certificate issued. Cotemporaneous therewith he signed and delivered to defendant the following paper, viz:

PHILADELPHIA, May 15, 1863.

Due William K. Barclay one-half the gain on five hundred shares of the preferred stock of the Union Canal Company, purchased by him and myself on joint account, when sold agreeably to his order, less the interest at six per cent. per annum on $1,593.75 from date to date of the aforesaid sale, I holding the certificate of said stock transferred to my name.

(Signed)          T. M. RETTEW.

This paper evidently contemplated a sale of the stock, with Barclay's assent, at a price that would yield a profit, the half of which, less interest on one-half the original cost, was pay-

able to him.   It made no provision for sharing any loss in the
venture, nor does it even suggest the idea of loss.   Barclay
furnished  none  of  the  money  used  in  the  purchase ; but,
inasmuch as the stock was procured through his agency, and he
was expected to promote the success of the venture, it appears
to have been the intention to secure for him one-half of the.
net gain, and to this end it was provided the sale should be
"agreeable to his order."   Such, we think, is the correct con-
struction of the paper, especially when viewed in the light of
facts, which were uncontradicted.   It may have been an unwise
arrangement on the part of plaintiff, but with that we have
nothing to do in construing the paper which he executed.   If
he had such unbounded confidence in the success of the spec-
ulation as to risk his money in reliance on a profitable sale as
the only means of reimbursement he has no just reason to
complain.   In the absence of an express or implied agreement
to share the loss, he has no claim on the defendant.   The
paper itself furnishes no evidence of such agreement ; on the
contrary it rather justifies the inference that defendant assumed
no liability, and, to that extent, accords with his version of
the transaction as given in the answer ; and we think the
weight of the other evidence is to the same effect.   The answer
is directly responsive to the main allegation in the bill, and, in
express terms, denies that defendant was to bear any loss.
The accepted doctrine of equity is that the answer, in so far
as it is directly responsive to any material allegation in the
bill, is not only evidence, but conclusive proof in favor of the
defendant, "unless it is overcome by the satisfactory testimony
of opposing witnesses, or of one witness, corroborated by other
circumstances and facts which give it greater weight than the
answer, or which are equivalent in weight to a second wit-
ness ;" Story's Equity Jurisprudence, § 1528.   Or, as the same
learned author otherwise expresses the doctrine : "When the
defendant, in express terms, negatives the allegations of the
bill, and the evidence is only of one person, affirming as a
witness, what has been so negatived, the Court will neither
make a decree, nor send the case to be tried at law, but simply
dismiss the bill.   In Vandegrift vs. Herbert, 3 C. E. Green,
466, the Chancellor, after recognizing the same rule, says that

inasmuch as the plaintiff appeals to the conscience of the defendant, and compels him to be a witness against himself, he is not allowed to impeach the credibility of the defendant, but must overcome his answer by stronger evidence.

What is there then, in this case, to overcome the responsive denial of the answer, corroborated as it is, to some extent, by the paper above quoted? The plaintiff claims that his own testimony, together with proof extracted from defendant's correspondence, is sufficient for that purpose. As to defendant's letters, they practically amount to nothing as evidence of an agreement on his part to share the loss. Some of them may be regarded as evasive, but they contain no admission of liability. In short, there is no evidence in the case, outside of plaintiff's own testimony, that tends, in any material degree, to weaken the force of the answer. Certainly none that, in the exercise of the utmost liberality, can be regarded as equivalent to the testimony of one witness.

It is a question whether the plaintiff's testimony, affirming as a witness what is alleged in his bill, should be accepted as the testimony of one witness in overcoming the responsive denial of the answer. Without expressing any opinion on that question, the fact that he is not a disinterested witness should be taken into consideration in weighing his testimony. In speaking of such testimony, the Chancellor, in the case last cited, says, the fact of the interest of the witness as a party to the suit must be taken into consideration, while the effect given to the responsive answer is arbitrarily fixed without reference to the interests of defendant.

From what has been said, it is manifest that an application of the chancery rule, that the responsive denial of the answer must prevail, unless overcome by testimony of two witnesses, or evidence equivalent thereto, leaves the plaintiff without adequate proof of the cardinal allegation of fact in his case. There was error in finding that he agreed to bear part of the loss incident to the purchase of the stock. Of this there was no direct evidence; nor is there anything in the case from which such an agreement can fairly arise by implication.

The view we have taken of the case renders it unnecessary

to consider the other grounds on which a reversal of the decree is urged.

The claim is very stale. The bill was filed about thirteen years after defendant's alleged refusal to assent to a sale of the stock. There was no concealment ; nor is there any material averment in the bill that was not known long before it was filed. The delay was inexcusable and the bill might well be dismissed on the ground of *laches*. The claim is based, as we have seen, on a single transaction, and if there had been any merit in the plaintiff's case, he had an adequate remedy at law.

Decree reversed and bill dismissed, and it is ordered the appellee pay the costs, including costs of this appeal.